UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

        Plaintiff,

    v.                                      Case No. 19-C-476

ELLEN RAY, et al.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       Plaintiff Mark Anthony Adell, who is a Wisconsin state prisoner representing himself, filed a complaint under 42 U.S.C. § 1983. I screened the complaint and allowed Plaintiff to proceed on Eighth and First Amendment claims against Defendants. Defendants move for summary judgment. Dkt. No. 13. The motion is fully briefed and before this court for decision.

### BACKGROUND

       The facts are taken from Defendants' Proposed Findings of Fact and Declarations in Support, and Plaintiff's deposition. Dkt. Nos. 15–23. Plaintiff submitted Proposed Findings of Fact, which contain additional facts but no responses to Defendants' proposed facts. Dkt. No. 35. Some of Plaintiff's proposed facts are parts of the screening order cut and pasted into his document, and others propose legal argument rather than stating facts at all. Nearly all Plaintiff's facts are unsupported by evidence in the record. Plaintiff's statement of facts is substantially noncompliant with this court's local rules. I will consider Plaintiff's proposed facts only to the extent they are supported in an affidavit or by evidence elsewhere in the record and will deem admitted

Defendants' facts, to which he failed to respond. *See* Fed. R. Civ. P. 56(c)(1) & (e); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), and (b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts. *See* Civil L. R. 56(b)(6).

## A. The Parties

Plaintiff is an inmate at Waupun Correctional Institution but sues officials who work at the Wisconsin Secure Program Facility (WSPS), where he previously was incarcerated and where the underlying events occurred. Dkt. No. 15, ¶ 1. He sues Nurses Mary Bartels, Rose Grochowski, and Kristin Running for failing to provide him medication in March through August 2018; and he sues Health Services Unit (HSU) Manager Jolinda Waterman, Warden Gary Boughton, and Institution Complaint Examiners (ICEs) Ellen Ray, William Brown, and Julie Payne for not responding to his complaints about refills of those medications. *Id.* He also sues Nurses Bartels, Grochowski, Running, and Beth Edge for retaliating against him for inmate complaints he filed against them. *Id*, ¶ 2.

On April 1, 2019, Plaintiff filed his § 1983 complaint against numerous defendants. Dkt. No. 1. I screened the complaint, dismissed it for failing to state a claim, and allowed Plaintiff an opportunity to amend his complaint. Dkt. No. 6. Plaintiff timely filed an amended complaint, which I then screened and allowed Plaintiff to proceed on Eighth Amendment claims against all defendants and First Amendment claims of retaliation against the nurses. Dkt. No. 8.

## B. Medication Refill Procedures

Inmates are responsible for monitoring their supply of medications and alerting the HSU when they need a refill. Dkt. No. 15, ¶ 5. Before an inmate runs out of a medication, he must fill

out a Refill Request form and submit it to the HSU or ask an officer to submit it to the HSU. *Id.*, ¶ 4. Inmates must account for and allow five to seven business days for a prescription to be refilled, although a refill may take longer if the request occurs over a weekend or holiday. *Id.*, ¶ 5. Inmates are instructed to contact the HSU if they do not receive their medication refill within seven to ten business days. *Id.*, ¶ 6. To contact the HSU inmates may fill out a Health Service Request or Interview/Information Request or may contact a security officer in their housing unit. *Id.* Inmates are responsible for following-up with the HSU if they have not received their medication. *Id.*, ¶ 7. It is not possible for HSU staff to track every medication prescribed to all of the nearly 500 inmates at WSPS. *Id.*

Licensed prison staff check in all medications received from the central pharmacy and keep them in the medication room. *Id.*, ¶ 8. Staff then transfer the medication to the inmate's housing unit. *Id.*, ¶ 9. Medications can be either controlled, which are kept on the medication cart for distribution by prison staff, or "keep on person," which are given to the inmate for self-administration. *Id.* Waterman received several inmate complaints about medication refills and spoke with the nurses and medication room staff several times "to reinforce the importance of refilling prescriptions." *Id.*, ¶ 10.

## C. Health Service Requests

Inmates who have medical concerns, questions, or requests for HSU staff fill out a health service request and submit it to the HSU. *Id.*, ¶ 25. Nurses triage the requests and respond to urgent requests within twenty-four hours. *Id.* They also arrange for same-day appointments for

urgent or emergency requests. *Id.*, ¶ 26. Requests are triaged the same whether addressed to the Health Services Manager (Waterman) or a physician. *Id.*, ¶ 27.

**D. Plaintiff's Medications**

Plaintiff was prescribed Excedrin for migraines and prednisone to treat his bowel disease. *Id.*, ¶ 3. Both medications are "keep on person" medications that staff do not control. *Id.* Plaintiff frequently submitted premature refill requests for these medications despite Waterman explaining to him the confusion caused by his premature requests. *Id.*, ¶ 11. Plaintiff did not need to have an entire one-month supply (90 tablets) of Excedrin at a time, and the Pharmacy Supervisor (who is not a defendant) recommended that he not have the full month supply at once. *Id.*, ¶ 12. Plaintiff's refill requests often were denied because he had too recently received a previous refill, so he had no need for additional medication. *Id.*, ¶ 13. According to Plaintiff's medical records and Waterman's declaration, Plaintiff never ran out of Excedrin or prednisone. *Id.*, ¶ 13 (citing Dkt. No. 17, ¶ 20).

**E. Plaintiff's Claims**

**1. Nurse Bartels, March 2018; Deliberate Indifference**

Plaintiff claims that in March 2018 Nurse Bartels deprived him of Excedrin while falsely asserting that she had dispensed 96 tablets of the medication to him. Dkt. No. 8 at 3. Plaintiff's medical records show that on January 2, 2018, he was prescribed 90 tablets of Excedrin per month (three per day) to treat migraines. Dkt. No. 15, ¶ 14; Dkt. No. 16-2 at 13; Dkt. No. 18-1 at 36. On March 4, 2018, he was issued 24 tablets of Excedrin or a generic equivalent. Dkt. No. 15, ¶ 15. On March 9, 2018, he was issued an additional 48 tablets of a generic equivalent to Excedrin. *Id.* Defendants state that three days later, Plaintiff returned the 48 tablets issued on March 9, 2018, in two sealed bottles. *Id.*, ¶ 16. The same day, Waterman reissued Plaintiff 48 tablets of Excedrin or

4

its equivalent. *Id.*, ¶ 17. Plaintiff was issued 24 additional tablets on March 17 and 21, 2018. *Id.*, ¶ 18. On March 18, 2018, Plaintiff submitted a refill request for Excedrin. *Id.*, ¶ 19. Bartels did not fulfill the request because he had been issued Excedrin a day earlier. *Id.*

### 2. Nurse Grochowski, May 2018; Deliberate Indifference

Plaintiff claims that in May 2018, Grochowski dispensed too low a dosage of prednisone. Dkt. No. 8 at 6; Dkt. No. 16-3 at 11. Plaintiff's medical records show that on April 10, 2018, Dr. Patterson (who is not a defendant) prescribed Plaintiff prednisone with tapered dosing: He was prescribed 50mg for one month, 40mg for one month, 30mg for two weeks, 20mg for two weeks, 10mg for two weeks, and finally 5mg for two weeks. Dkt. No. 15, ¶ 20; Dkt. No. 16-3 at 8. Plaintiff was to take each dosage four times daily. Dkt. No. 15, ¶ 20; Dkt. No. 16-3 at 8. He was issued a fifteen-day supply of prednisone on April 18, 2018 and a six-day supply on April 24, May 1, and May 14, 2018. Dkt. No. 15, ¶¶ 21–22; Dkt. No. 16-3 at 8. Following the May 14, 2018 prescription, his dosage was tapered down from 50mg to 40mg, still four times daily. Dkt. No. 15, ¶ 22; Dkt. No. 16-3 at 8. On May 18, 2018, he was given the full thirty-day supply of prednisone, which would cover his entire 40mg dosage period. Dkt. No. 15, ¶ 23; Dkt. No. 16-3 at 8. Grochowski swears that she had no reason to believe that Plaintiff did not have the proper dosage of his medication during these months. Dkt. No. 22, ¶ 10.

### 3. Nurse Edge, May 2018; Retaliation

Plaintiff claims that Nurse Edge intercepted a health service request in retaliation for complaints he had filed against her and other nurses. Dkt. No. 8 at 6. On May 15, 2018, the HSU received a request from Plaintiff addressed to Dr. Patterson, which complained that the nurses were not following his prescriber orders for prednisone. Dkt. No. 15, ¶ 28; Dkt. No. 18-2 at 5. Plaintiff sent a second request the same day to Waterman also about his prednisone and asking her to

dispense 50mg because there had been a delay in starting his most recent order.  Dkt. No. 15, ¶ 28; Dkt. No. 18-2 at 21.  Edge received these requests but did not forward them to Dr. Patterson or Waterman because she was able to provide a response after reviewing Plaintiff's HSU records. Dkt. No. 15, ¶ 29.  She concluded that because Plaintiff had received the allocated supply of prednisone one day earlier (on May 14, 2018), the issue was resolved, and she did not need to forward Plaintiff's requests to anyone for a response.  *Id.*, ¶ 30; Dkt. No. 18-2 at 5, 21.  Edge swears she was not aware of any inmate complaint Plaintiff filed against her.  Dkt. No. 20, ¶ 13.

### 4.  Nurse Bartels, July 2018; Deliberate Indifference

Plaintiff next claims that Nurse Bartels intentionally refused him a prednisone refill in July 2018.  Dkt. No. 8 at 6.  Plaintiff's medical records show that on June 18, 2018, Dr. Patterson discontinued his previous order of prednisone and ordered Plaintiff to take 30mg once daily for six months.  Dkt. No. 15, ¶ 31; Dkt. No. 18-1 at 52.  On June 25, 2018, Plaintiff was issued ninety 10mg pills, a thirty-day supply.  Dkt. No. 15, ¶ 32; Dkt. No. 16-4 at 19.  On July 11, 2018, Grochowski fulfilled Plaintiff's refill request from two days earlier and issued Plaintiff thirty 10mg tablets, enough for ten days.  Dkt. No. 15, ¶ 33; Dkt. No. 16-4 at 17, 19.  The same day, however, Plaintiff submitted another refill request for prednisone.  Dkt. No. 15, ¶ 34; Dkt. No. 18-1 at 858. Nurse Bartels received the request and the next day responded that it could not be refilled because he had received a refill a day earlier (July 11, 2018).  Dkt. No. 15, ¶ 34; Dkt. No. 18-1 at 858.  On July 25, 2018, Nurse Running filled an order for the remaining sixty 10mg pills, bringing Plaintiff's total supply to sixty days since June 25, 2018.  Dkt. No. 15, ¶ 33; Dkt. No. 18-1 at 830.

### 5.  Nurse Running, August 2018; Deliberate Indifference

Plaintiff claims that Nurse Running ignored a request to dispense a prednisone refill on August 4, 2018.  Dkt. No. 8 at 6.  Plaintiff's medical records show that on August 2, 2018, Plaintiff

submitted a refill request for 30mg of prednisone. Dkt. No. 15, ¶ 35; Dkt. No. 18-1 at 822. The HSU received the request the next day, and Nurse Grochowski responded that because he had received a refill on July 25, 2018, his prednisone could not be refilled until August 14, 2018. Dkt. No. 15, ¶¶ 35–36; Dkt. No. 18-1 at 822. Between July 25 and August 11, 2018, Plaintiff submitted nine premature refill requests for prednisone. Dkt. No. 15, ¶ 38; Dkt. No. 18-1 at 797–98, 800–01, 804, 806, 812–13 & 822. HSU staff (nearly always Running) responded to each of these requests before fulfilling it on August 11, 2018—three days earlier than Grochowski had told him he needed to wait. Dkt. No. 15, ¶¶ 37–38; Dkt. No. 18-1 at 797–98, 813 & 822.

### 6. Nurses Grochowski, Bartels, and Running; Retaliation

Plaintiff claims that Nurses Grochowski, Bartels, and Running retaliated against him for filing inmate complaints against them. Dkt. No. 8 at 7. Grochowski and Running swear they were not aware of any inmate complaints Plaintiff filed against them. Dkt. No. 19, ¶ 15; Dkt. No. 22, ¶ 11. Bartels states she knew Plaintiff was filing inmate complaints about his medical care generally but was unaware of the details or subject matter of the complaints. Dkt. No. 21, ¶ 19.

### 7. Warden Boughton and ICEs Ray, Brown, and Payne; Deliberate Indifference

Finally, Plaintiff claims that Warden Boughton and ICEs Ray, Brown, and Payne ignored his inmate complaints against Waterman and the nurses' alleged intentional mishandling of his refill requests despite knowing the risks that missed refills posed to his health. Dkt. No. 8 at 6–7. Defendants assert that Plaintiff filed inmate complaints only against Ray, Brown, and Payne but not against Boughton. Dkt. No. 15, ¶ 47.

7

ENALYSIS

# ANALYSIS

## A. Legal Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

Plaintiff rarely cites evidence in the record in support of his proposed facts or arguments in his materials opposing Defendants' motion. Neither argument nor speculation is sufficient to avoid summary judgment. *See Ammerman v. Singleton*, --- F. App'x ----, No. 19-3304, 2020 WL 4815845, at *3 (7th Cir. Aug. 19, 2020) (citing *Herzog v. Graphic Packaging Intl, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014)) ("[S]peculation is insufficient to survive summary judgment."); *Cooper v. Haw*, 803 F. App'x 942, 946 (7th Cir. 2020) (citing *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012)) ("[T]he nonmoving party needs to come forward with *evidence*." (emphasis in original)). The court will disregard any proposed fact or argument Plaintiff fails to support with evidence.

**B. Exhaustion**

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). Exhaustion is an affirmative defense, and Defendants bear the burden of proving that Plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Inmates must exhaust all administrative remedies that the Wisconsin Department of Corrections (DOC) has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. Wis. Admin. Code § DOC 310.05. To fully exhaust administrative remedies in Wisconsin, the inmate must file a complaint with the ICE within fourteen calendar days of the incident, *see id.*, § DOC 310.07(2), appeal an adverse decision within fourteen days of that decision, *id.*, § DOC 310.12, and await a final decision from the Office of the DOC Secretary, *id.*, § DOC 310.13.

An inmate may file only one complaint per week unless it involves "the inmate's health and personal safety" or is made under the Prison Rape Elimination Act. Wis. Admin. Code

9

§ DOC 310.07(7). Each complaint may address only one, clearly identified issue. *Id.*, § DOC 310.07(5)). An ICE may return an improper complaint within ten days and permit the inmate to resubmit a corrected complaint within ten additional days. *Id.*, § DOC 310.10(5). The ICE also may reject the complaint for various reasons, including if the issue raised has previously been addressed. *Id.*, § DOC 310.10(6). If the ICE rejects the complaint, the inmate has ten days to appeal the rejection to a reviewing authority. *Id.*, § DOC 310.10(10). The decision of the reviewing authority is final and subject to the fourteen-day appeal period. *Id.*, § DOC 310.12.

Defendants contend that Plaintiff failed to exhaust his administrative remedies for his deliberate indifference claims against Nurse Running and his retaliation claim against all four nurses. Dkt. No. 14 at 11–12. Defendants assert that Plaintiff did not file any inmate complaints about those claims and, even if he did, those complaints were "insufficient to put the state on notice of the nature of the wrong." *Id.* at 12 (citing *Lockett v. Goff*, No. 17-CV-93, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017)).

As noted, Plaintiff's response materials do not comply with the Federal Rules of Civil Procedure or this court's local rules. He submitted twelve "affidavits," which are more response brief than sworn declaration. Many of the statements in the "affidavits" address subjects about which he is not competent to testify because he lacks personal knowledge. *See* Fed. R. Civ. P. 56(e); Fed. R. Evid. 602. To these "affidavits" he attached hundreds of pages of exhibits. Rather than identifying the specific exhibits that show a genuinely disputed fact, Plaintiff generally states that the "affidavits and supporting exhibits in all parts of the Court file" demonstrate a genuine issue of material fact. Dkt. No. 35, ¶ 26. Specific to exhaustion, Plaintiff asserts—without citing anything in the record—that he "has made a sufficient rebuttal to the defendants' assertions that he has not sufficiently exhausted all available admin remedies." *Id.*, ¶ 20. It is not the job of the

district court "to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Anderson*, 477 U.S. at 249–50). It is the responsibility *of the parties* "to identify the evidence that will facilitate this assessment." *Id.*; *see also Garza v. Wautoma Area Sch. Dist.*, 984 F. Supp. 2d 932, 935 (E.D. Wis. 2013) (quoting *Smith*, 321 F.3d at 683 (internal quotation omitted)) (noting that a "district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact"). Plaintiff fails to identify what evidence in the record supports each of his claims and renders summary judgment inappropriate. For that reason alone, I could grant Defendants' motion and consider Plaintiff's counter-arguments waived or forfeited. *See id.* (citing *Bey v. Cook County*, No. 10-C-6902, 2012 WL 5995732, at *1 n.1 (N.D. Ill. Nov. 28, 2012)).

Nonetheless, the undisputed evidence shows that Plaintiff failed to exhaust his administrative remedies for his deliberate indifference claims against Nurse Running and his retaliation claims against the nurses. To properly exhaust, Plaintiff had to submit his complaints against each nurse through the inmate complaint system within fourteen days of the incident, as Wisconsin administrative rules require. He then had to follow those complaints through the full appeal process until he received a final decision from the Office of the Secretary. The history of Plaintiff's inmate complaints for the relevant time period shows that Plaintiff failed to do any of those things for these claims. Dkt. No. 16, ¶ 13; Dkt. No. 16-1 at 25.

Plaintiff makes several counter-arguments. He asserts that the ICEs wrongly rejected duplicative complaints about his medication refills that they should have accepted as addressing issues affecting his health or safety, Dkt. No. 42, ¶¶ O–Q; the ICEs wrongly withheld his rejected

11

complaints, Dkt. No. 47; and he exhausted his administrative remedies for his retaliation claim against Edge because he filed inmate complaints against her in 2017 and 2018—prior to her alleged May 2018 misconduct, Dkt. No. 45, ¶¶ N–U.

In support of these arguments, Plaintiff attached numerous inmate complaints, appeals, and inmate complaint reports. Dkt. No. 35-1 at 66–77; Dkt. No. 42-1; Dkt. No. 44-1 at 29–31; Dkt. No. 46-1 at 1–3. Plaintiff's attachments total over 185 pages and show he overwhelmed the ICEs, as he has overwhelmed the court, with complaints and complaints about complaints. In one instance the ICE returned twenty-six complaints Plaintiff filed in a single week, each of which had been returned four times prior. Dkt. No. 42-1 at 135. Other complaints are unrelated to his claims in this lawsuit regarding refills of prednisone and Excedrin. *E.g. id.* at 56, 71–72, 75–78. Plaintiff fails to specify the *relevant* documents showing he exhausted his administrative remedies and instead directs the court to "see Exs. 1 thru 0194." ECF No. 42, ¶ S. And there is no discernable order or organization to the exhibits, which are all kinds of documents. On the rare occasion he does list specific exhibits, he does not specify which of his claims the exhibits address or how they show he exhausted administrative remedies. *Id.*, ¶ T (listing exhibits 007, 067, 069–71, and 081). This haphazard presentation falls far short of fulfilling Plaintiff's responsibility to directly cite facts in the record showing a genuine dispute of material fact. *See Garza*, 984 F. Supp. 2d at 936.

Plaintiff's contentions that his complaints were wrongly rejected or withheld are incorrect. ICEs explained to Plaintiff that his improper complaints would be returned only once to allow him to correct the errors in the complaint and refile in compliance with DOC administrative rules. Dkt. No. 47-1 at 7–8, 10; *see* Wis. Admin. Code § DOC 310.10(5). Plaintiff resubmitted the same complaints multiple times without correction. As the ICEs warned, those non-compliant complaints were rejected and not returned to Plaintiff. Plaintiff's proper recourse was to appeal

12

the rejection within fourteen days and then follow the full appeal process. *See* Wis. Admin. Code §§ DOC 310.10(10), 310.12. Plaintiff instead inundated the ICEs with complaints, all of which failed to follow DOC administrative rules. By not following those rules and appealing the rejected complaints, he failed to exhaust his administrative remedies for those complaints.

Nor do Plaintiff's inmate complaints about Edge's previous misconduct exhaust administrative remedies about her future actions. Edge's alleged misconduct relevant to this litigation occurred in May 2018. Plaintiff filed complaints about her in 2017 and January and April 2018. Dkt. No. 44-1 at 30; Dkt. No. 45-1. Plaintiff must have filed an inmate complaint against Edge within fourteen days of her misconduct. Plaintiff did submit two complaints against Edge on May 16 and May 20, 2018, about her intercepting a request for health services. Dkt. No. 44-1 at 5, 29. Both complaints have a "date received" stamp and were returned because Plaintiff had already filed a complaint that week. *Id.* Because the complaints were returned, and not rejected, they do not have a file number. *See* Wis. Admin. Code § DOC 310.10(3) (providing that accepted and rejected complaints are assigned a file number). Nor does either complaint about Edge appear on Plaintiff's inmate complaint history report. Dkt. No. 16-1 at 25. That shows Plaintiff never resubmitted either complaint against Edge as his one complaint the following week, even though he could have within the fourteen-day deadline. Merely submitting these complaints was not enough. By not complying with DOC rules, resubmitting the complaints against Edge, and completing the full complaint process Plaintiff did not exhaust his administrative remedies for his claim against Edge.

The same goes for a complaint Plaintiff submitted that mentions Running, though it does not assert misconduct by her. Dkt. No. 35-1 at 51. The complaint was received on July 17, 2018, and returned because Plaintiff already filed one complaint that week. *Id.* The complaint, like the

May 2018 complaints against Edge, has no file number, suggesting it was returned and neither rejected nor accepted by an ICE. *See* Wis. Admin. Code § DOC 310.10(3). Even if this complaint properly alleged Running's misconduct, Plaintiff's failure to resubmit the complaint the next week and complete the complaint process means he did not exhaust his administrative remedies.

The evidence shows Plaintiff failed to exhaust his administrative remedies on his claims of deliberate indifference against Nurse Running and his retaliation claim against all four nurses. Nor does Plaintiff show that administrative remedies were unavailable. These claims will be **DISMISSED without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

## C. Deliberate Indifference

Plaintiff claims that Nurses Bartels and Grochowski failed to provide him proper doses of his medications and that HSU Manager Waterman, Warden Boughton, and ICEs Ray, Brown, and Payne failed to correct those nurses' actions. These claims regarding the denial of medical care are analyzed under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To proceed on his Eighth Amendment claim, Plaintiff must demonstrate both that he "suffered from an objectively serious medical condition" and that Defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). An objectively serious medical condition is "one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768,

14

776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). In short, the evidence must evince Defendants' "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018) (citing *Farmer*, 511 U.S. at 837, 844–45).

### 1. Bartels: Denial of Excedrin, March 2018

Plaintiff's medical records show that he was issued 24 tablets of Excedrin on March 4, 2018; 48 tablets on March 9, 2018, which he returned three days later (March 12, 2018) and was reissued the same day; and 24 tablets on March 17 and 21, 2018. On March 18, 2018, Plaintiff submitted a refill request for Excedrin, which Bartels did not fulfill because Plaintiff had been issued the medication a day earlier. At his deposition Plaintiff asserted that he did not receive his refill on March 12, 2018, and had to wait until March 15, 2018. Dkt. No. 23 at 5:18–19. He testified that he suffered "withdrawal and extreme headaches" without the Excedrin. *Id.* at 5:20–21. He did not testify how long his symptoms lasted or how many days he had been without Excedrin. He also testified his memory was "faulty" and that because he had several lawsuits pending about medical issues, he relied on his complaint and attachments for information about his claims. *Id.* at 5:6–17, 6:10–11. His amended complaint states he went "several days" without Excedrin. Dkt. No. 7, ¶ 14. There is no evidence that Plaintiff submitted a refill request on March 15, 2018.

Plaintiff's prescription was to take three tablets per day for migraines. The March 4, 2018, tablets were enough for eight days or until March 12, 2018. Plaintiff returned the 48 tablets issued to him on March 9, 2018, but he was reissued those tablets on March 12, 2018, the day his supply would have run out. The 48 tablets would last him sixteen days, until March 28, 2018. In the meantime he was issued 48 additional tablets, which would have lasted him well into April 2018.

15

At most, Plaintiff may have missed one or two tablets on March 12, 2018, before receiving more that day. The undisputed evidence shows Plaintiff should have had plenty of tablets to cover his prescription between March 12, 2018, and his request on March 18, 2018. Given he had received a refill on March 17, 2018, Bartels reasonably denied the March 18, 2018 refill request. The same holds true if, as Plaintiff insists, Bartels denied his refill request on March 15, 2018. He would not have needed additional medication that date, only three days since his last refill. Even accepting that Plaintiff's migraines are an objectively serious medical condition, the evidence does not show that Bartels disregarded that condition.[1]

### 2. Grochowski: Denied Prednisone, May 2018

In his complaint Plaintiff states that Grochowski denied him a refill of prednisone "on or about" May 14, 2018, responding that it had been "issued." Dkt. No. 7, ¶¶ 23–24 (citing Dkt. No. 7-1 at 49 (Exhibit 44)). Plaintiff's medical records show that he began a tapered dosing of prednisone on April 18, 2018. That day, he was issued a fifteen-day supply of prednisone. He was then issued six-day supplies each on April 24, May 1, and May 14, 2018. That medication would have lasted Plaintiff until May 20, 2018. On May 18, 2018, he was issued a thirty-day supply of prednisone, which would have lasted until at least June 16, 2018. Nothing in his medical records suggests his supply or dosage was low or incorrect.

---

[1] Plaintiff also complained about receiving the generic-brand medication instead of Excedrin. *See, e.g.*, Dkt. No. 18-2 at 7, 19. Waterman informed him that the HSU's vendor sent only the generic-brand medication, so he would not be receiving Excedrin. *Id.* Unless the medications are materially different, it is not deliberate indifference for a prison to provide generic and not name-brand medications. *See Meeks v. Shuman*, No. 95 C 3010, 1997 WL 12790, at *3–5 (N.D. Ill. Jan. 10, 1997). Plaintiff does not assert or provide evidence to show that the generic-brand medication was different than or inferior to Excedrin.

Case 1:19-cv-00476-WCG   Filed 09/01/20   Page 16 of 21   Document 50

Plaintiff testified generally that he would experience flare-ups of his ulcerative colitis mixed with Crohn's Disease when he missed doses of prednisone. Dkt. No. 23 at 10:6–20. But he again could not say when he missed a dose and merely relied on what he had written in his complaint and health service requests. *Id.* at 8:16–25. Specific to Grochowski, he stated only that she "stands out prominently as one of the HSU staffpersons that made no secret that she was hostile towards me." *Id.* at 8:23–25. Being "hostile" towards Plaintiff does not mean she deliberately disregarded his medical condition, and Plaintiff points to no evidence showing that she unreasonably denied him a refill of prednisone. The undisputed evidence shows instead that Plaintiff was issued appropriate doses of prednisone in April and May 2018. Grochowski is entitled to judgment as a matter of law.

### 3. Bartels: Denial of Prednisone, July 2018

Plaintiff's medical records show that on June 18, 2018, his prednisone prescription changed, and he was ordered to take 30mg once daily for six months. On June 25, 2018, Plaintiff was issued a thirty-day supply of prednisone; and on July 11, 2018, he received an additional ten-day supply. The same day, Plaintiff submitted a refill request. Bartels received the request the next day and denied it because Plaintiff received the refill the previous day. On July 25, 2018, the HSU provided Plaintiff an additional twenty-day supply, bringing his total supply to sixty days since June 25, 2018.

Plaintiff does not contest these records and does not point to anything in the record showing that he was without prednisone for any amount of time in July 2018. Nor does he point to anything suggesting Bartels unreasonably denied his refill request, given he had one day earlier received the refill he requested. Because Plaintiff fails to support his claims against Bartels with any evidence

17

showing she was deliberately indifferent to his serious medical conditions, she is entitled to judgment as a matter of law.

### 4. Ray, Brown, and Payne

As I noted in the initial screening order, Plaintiff may not hold the ICE defendants liable for denying his inmate complaints or because he disagrees with their decisions. Dkt. No. 6 at 5 (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.")). Plaintiff could have a cause of action if he shows the ICE defendants refused to do their job and left him "to face risks that could be averted by faithful implementation of the grievance machinery." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). But Plaintiff's exhibits show that the ICE defendants reviewed Plaintiff's numerous complaints, rejected them when they failed to follow DOC administrative rules, and directed him how to correct his submissions for consideration. Plaintiff repeatedly failed or refused to follow their directions and continued to resubmit the same returned or rejected complaints. The ICE defendants were not deliberately indifferent for doing their jobs. *Id.*

Plaintiff asserts that Ray, Brown, and Payne wrongly concluded that his complaints did not constitute a threat to his health and safety to be exempted from the one-complaint-per-week rule. He testified that he believed these defendants "saw me as being overly litigious" and mishandled his complaints "just to get them out of the way and thumb their nose at the complaint procedures and, I believe, to show me who's the boss." Dkt. No. 23 at 21:19–25. Plaintiff does not have personal knowledge of the ICE defendants' opinion of him, and his speculation about their motives does not render summary judgment inappropriate. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th

Cir. 2003) (citing Fed. R. Civ. P. 56(e); Fed. R. Evid. 602; *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

The only evidence arguably related to Plaintiff's assertion is a letter Ray sent Plaintiff with a returned complaint on November 5, 2018. Dkt. No. 42-1 at 163. Ray wrote that the complaint was not accepted because Plaintiff had already filed a complaint that week. *Id.* Plaintiff responded that the complaint was the first of the week, and Ray improperly returning it was "a knee jerk reaction." *Id.* Ray responded that Plaintiff was correct, apologized, and informed him the complaint was "accepted [and] filed." *Id.* Plaintiff similarly protested a complaint Ray returned on November 13, 2018, but Ray did not respond. *Id.* at 166. This single incident does not show that the ICE defendants routinely and intentionally misclassified his inmate complaints as not addressing his health or safety. It shows a single error, for which Ray apologized, likely brought on by Plaintiff's overwhelming filings. And her mistake related to the timing of the complaint, not in misclassifying it as raising an issue of Plaintiff's health and safety. A single, isolated incident of hasty work does not evince a refusal by Ray to do her job and leave Plaintiff without redress for his medical concerns. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [inmate's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Because no evidence supports Plaintiff's speculation about Ray, Brown, and Payne's handling of his complaints, they are entitled to judgment as a matter of law.

### 5. Waterman and Boughton

Plaintiff seeks to hold Waterman and Boughton liable based on their roles as supervisors at the prison. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.

19

Plaintiff instead "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Plaintiff has failed to show that any nurse or prison employee violated his rights by denying him refill requests or responding to his inmate complaints, and he failed to exhaust his administrative remedies on his retaliation claims. There is therefore no underlying constitutional violation for which Waterman or Boughton may be held responsible. What's more, Boughton— as Warden of the prison—is not liable for individual incidents like Ray's error but is responsible "only for systematic lapses in policies meant to protect prisoners." *Flournoy v. Ghosh*, 881 F. Supp. 2d 980, 991 (N.D. Ill. 2012) (citing *Steidl v. Gramley*, 151 F.3d 739, 741–42 (7th Cir. 1998)). The evidence shows no such lapse existed. Plaintiff also asserts Waterman "lied to ICES and other staff conducting oversight into the alleged mishandled refills at issue." Dkt. No. 35, ¶ 34. But he cites no *evidence* to support that argument, and his speculation alone is not enough to defeat summary judgment. Waterman and Boughton are entitled to judgment as a matter of law.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, Dkt. No. 13, is **GRANTED**, and this case is **DISMISSED**. Plaintiff's deliberate indifference claim against Nurse Running and his retaliation claims against Nurses Bartels, Grochowski, Running,

20

and Edge are **DISMISSED without prejudice** for failure to exhaust. Plaintiff's remaining

deliberate indifference claims are **DISMISSED with prejudice**.

Dated at Green Bay, Wisconsin this 1st day of September, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.